1  ELIZABETH A. SPERLING - State Bar No. 231474
   esperling@glaserweil.com
2  ALEXANDER R. MILLER - State Bar No. 294474
   amiller@glaserweil.com
3  JACK DAY – State Bar No. 324516
   jday@glaserweil.com
4  **GLASER WEIL FINK HOWARD**
   **JORDAN & SHAPIRO LLP**
5  501 W. Broadway, Suite 800
   San Diego, CA 92101
6  Telephone:  (619) 765-4380
   Facsimile:   (619) 483-0646
7
   Attorneys for Defendants
8  Caydon San Diego Property LLC, Caydon
   USA Holding LLC, and Caydon USA
9  Property Group LLC

10              **UNITED STATES DISTRICT COURT**

11             **SOUTHERN DISTRICT OF CALIFORNIA**

12  THE PEOPLE OF THE STATE OF            CASE NO.: **'23 CV 1020 LAB  DDL**
    CALIFORNIA and CITY OF SAN
13  DIEGO, a municipal corporation,        **DECLARATION OF ELIZABETH**
                                           **A. SPERLING IN SUPPORT OF**
14            Plaintiffs,                  **DEFENDANTS' NOTICE OF**
                                           **REMOVAL**
15  v.

16  CAYDON SAN DIEGO PROPERTY
    LLC, a Delaware Limited Liability
17  Company; CAYDON USA HOLDING
    LLC, a Texas Foreign Limited Liability
18  Company and a Delaware Limited
    Liability Company; CAYDON USA
19  PROPERTY GROUP, LLC, a Delaware
    Limited Liability Company; MATTHEW
20  HUTTON, Receiver and Manager of
    CAYDON USA PROPERTY GROUP
21  HOLDINGS PTY LTD; and DOES 1
    through 50, inclusive,
22
              Defendants.
23

24

25

26

27

28

2287738

**Glaser Weil**

## <u>DECLARATION OF ELIZABETH A. SPERLING</u>

I, Elizabeth A. Sperling, declare as follows:

1.      I am an attorney duly licensed to practice law before all courts of the State of California and in the Southern District of California and am a partner of Glaser Weil Fink Howard Jordan & Shapiro LLP ("Glaser Weil"), attorneys of record for Defendants Caydon San Diego Property LLC ("Caydon San Diego"), Caydon USA Holding LLC ("Caydon USA Holding"), and Caydon USA Property Group ("Caydon USA Property Group") (collectively, "Defendants") in this matter.  This declaration is submitted in support of Defendants' Notice of Removal ("Removal Notice").  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      Attached hereto as Exhibit 1 is a true and correct of the Appendix of State Court Filings filed in the Superior Court of the State of California, County of San Diego, *The People of the State of California, et al. v. Caydon San Diego Property LLC, et al.*, Case No. 37-2023-00017820-CU-MC-CTL ("State Court Action").

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Civil Case Cover Sheet served on Defendants in the State Court Action.

4.      Attached hereto as Exhibit 3 are true and correct copies of the Summonses served on Defendants in the State Court Action.

5.      Attached hereto as Exhibit 4 is a true and correct copy of Plaintiffs' Complaint served on Defendants in the State Court Action.

6.      Attached hereto as Exhibit 5 is a true and correct copy of the Notice of Case Assignment and Case Management Conference served on Defendants in the State Court Action.

7.      Attached hereto as Exhibit 6 is a true and correct copy of the Electronic Filing Requirements served on Defendants in the State Court Action.

8.      Attached hereto as Exhibit 7 is a true and correct copy of the Alternative Dispute Resolution (ADR) Information served on Defendants in the State Court Action.

DECLARATION OF ELIZABETH A. SPERLING IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

2287738

9.     Attached hereto as Exhibit 8 is a true and correct copy of the General Order of the Presiding Department served on Defendants in the State Court Action.

10.    Based on my review of the docket for the State Court Action, there have been no other filings and orders made in the State Court Action.

11.    Defendants will promptly notify (and simultaneously do provide notice with this filing) Plaintiffs and the Clerk of the Superior Court of California, County of San Diego, that the case has been removed.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed on June 1, 2023 in San Diego, California.

 /s/ Elizabeth A. Sperling
Elizabeth A. Sperling

DECLARATION OF ELIZABETH A. SPERLING IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

2287738

# EXHIBIT 1

ELIZABETH A. SPERLING - State Bar No. 231474
esperling@glaserweil.com
ALEXANDER R. MILLER - State Bar No. 294474
amiller@glaserweil.com
JACK DAY – State Bar No. 324516
jday@glaserweil.com
**GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP**
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone:  (619) 765-4380
Facsimile:   (619) 483-0646

Attorneys for Defendants
Caydon San Diego Property LLC, Caydon
USA Holding LLC, and Caydon USA
Property Group LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA and CITY OF SAN DIEGO, a municipal corporation, | CASE NO.: |
| Plaintiffs, | **DEFENDANTS' APPENDIX OF STATE COURT FILINGS** |
| v. | |
| CAYDON SAN DIEGO PROPERTY LLC, a Delaware Limited Liability Company; CAYDON USA HOLDING LLC, a Texas Foreign Limited Liability Company and a Delaware Limited Liability Company; CAYDON USA PROPERTY GROUP, LLC, a Delaware Limited Liability Company; MATTHEW HUTTON, Receiver and Manager of CAYDON USA PROPERTY GROUP HOLDINGS PTY LTD; and DOES 1 through 50, inclusive, | |
| Defendants. | |

## APPENDIX OF STATE COURT FILINGS

| DOCUMENT | DATED | EXHIBIT |
|---|---|---|
| Civil Case Cover Sheet | Filed: April 27, 2023 | 2 |
| Summons | Filed: April 27, 2023 | 3 |
| Complaint | Filed: April 27, 2023 | 4 |
| Notice of Case Assignment and Case Management Conference | Filed: April 27, 2023 | 5 |
| Electronic Filing Requirements | Filed: April 27, 2023 | 6 |
| Alternative Dispute Resolution (ADR) Information | Filed: April 27, 2023 | 7 |
| General Order of the Presiding Department | Filed: March 11, 2021 | 8 |

DATED:  June 1, 2023

Respectfully submitted,

**GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP**

   /s/ Elizabeth A. Sperling

Elizabeth A. Sperling
Attorneys for Defendants Caydon San Diego Property LLC, Caydon USA Holding LLC, and Caydon USA Property Group LLC

# EXHIBIT 2

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>MARA W. ELLIOTT, City Attorney<br>PAIGE E. FOLKMAN, Assistant City Attorney<br>DAVID E. MILLER, Deputy City Attorney   CA State Bar #174469<br>1200 Third Avenue, Suite 700, San Diego, CA  92101<br>TELEPHONE NO.: 619 533-5500    FAX NO.: 619 533-5505<br>ATTORNEY FOR *(Name):* Plaintiffs People of the State of CA and City of San Diego | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**04/27/2023** at 08:27:56 AM<br>Clerk of the Superior Court<br>By Armando Villasenor, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego, CA  92101
BRANCH NAME: Central / Hall of Justice

CASE NAME: The People of the State of California and City of San Diego, a municipal corporation v. Caydon San Diego Property LLC., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2023-00017820-CU-MC-CTL |
|---|---|---|
| ☒ **Unlimited** ☐ **Limited**<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | ☐ Counter ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Timothy Taylor<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☒ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* Two (2)
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 26, 2023

David E. Miller, Deputy City Attorney
(TYPE OR PRINT NAME) ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET**   EXHIBIT 2   Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

EXHIBIT 2
Page 2

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT 3

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANTS:** CAYDON SAN DIEGO PROPERTY LLC, a Delaware
**(AVISO AL DEMANDADO):**   Limited Liability Company; CAYDON USA HOLDING LLC,
a Texas Foreign Limited Liability Company and a Delaware Limited Liability Company; CAYDON USA
PROPERTY GROUP, LLC, a Delaware Limited Liability Company; MATTHEW HUTTON, Receiver and
Manager of CAYDON USA PROPERTY GROUP HOLDINGS PTY LTD; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFFS:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
THE PEOPLE OF THE STATE OF CALIFORNIA and CITY OF SAN DIEGO, a
municipal corporation

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/27/2023** at 08:27:56 AM

Clerk of the Superior Court
By Armando Villasenor, Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Diego
330 W. Broadway, San Diego, California 92101

CASE NUMBER:
*(Nú)*
37-2023-00017820-CU-MC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mara W. Elliott, City Attorney, David E. Miller, Deputy City Attorney,  Office of the City Attorney
1200 Third Avenue, Suite 700, San Diego, CA  92101  Telephone: 619-533-5500  Fax: 619-533-5505

| DATE: *(Fecha)* | 04/28/2023 | Clerk, by *(Secretario)* | a. Villasenor  A. Villasenor | , Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* CAYDON SAN DIEGO PROPERTY LLC, a Delaware Limited Liability Company
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* Limited Liability Company

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc. www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|---|

EXHIBIT 3
Page 1

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANTS:** CAYDON SAN DIEGO PROPERTY LLC, a Delaware
**(AVISO AL DEMANDADO):** Limited Liability Company; CAYDON USA HOLDING LLC,
a Texas Foreign Limited Liability Company and a Delaware Limited Liability Company; CAYDON USA
PROPERTY GROUP, LLC, a Delaware Limited Liability Company; MATTHEW HUTTON, Receiver and
Manager of CAYDON USA PROPERTY GROUP HOLDINGS PTY LTD; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFFS:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
THE PEOPLE OF THE STATE OF CALIFORNIA and CITY OF SAN DIEGO, a
municipal corporation

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/27/2023** at 08:27:56 AM

Clerk of the Superior Court
By Armando Villasenor, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Superior Court of California, County of San Diego 330 W. Broadway, San Diego, California 92101 | 37-2023-00017820-CU-MC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mara W. Elliott, City Attorney, David E. Miller, Deputy City Attorney,  Office of the City Attorney
1200 Third Avenue, Suite 700, San Diego, CA  92101   Telephone: 619-533-5500  Fax: 619-533-5505

| DATE: *(Fecha)* 04/28/2023 | Clerk, by *(Secretario)* a. Villasenor A. Villasenor | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: CAYDON USA HOLDING LLC, a Texas Foreign Limited Liability Company and a Delaware Limited Liability Company

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☑ other *(specify)*: Limited Liability Company
4. ☐ by personal delivery on *(date)*: 5/3/23

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc. www.FormsWorkflow.com | Page 1 of 1 Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|---|

EXHIBIT 3
Page 2

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANTS:**  CAYDON SAN DIEGO PROPERTY LLC, a Delaware
**(AVISO AL DEMANDADO):**   Limited Liability Company; CAYDON USA HOLDING LLC,
a Texas Foreign Limited Liability Company and a Delaware Limited Liability Company; CAYDON USA
PROPERTY GROUP, LLC, a Delaware Limited Liability Company; MATTHEW HUTTON, Receiver and
Manager of CAYDON USA PROPERTY GROUP HOLDINGS PTY LTD; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFFS:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
THE PEOPLE OF THE STATE OF CALIFORNIA and CITY OF SAN DIEGO, a
municipal corporation

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/27/2023** at 08:27:58 AM

Clerk of the Superior Court
By Armando Villasenor, Deputy Clerk

Delivered 5 - 3 - 2023

DSC # 10708 Ed

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTICE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
   ¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.
   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of California, County of San Diego
330 W. Broadway, San Diego, California 92101

CASE NUMBER:
(Número del Caso):
37-2023-00017820-CU-MC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Mara W. Elliott, City Attorney, David E. Miller, Deputy City Attorney,  Office of the City Attorney
1200 Third Avenue, Suite 700, San Diego, CA  92101   Telephone: 619-533-5500 Fax: 619-533-5505

DATE:   04/28/2023
(Fecha)                                    Clerk, by    a. Villasenor                                      , Deputy
                                              (Secretario)      A. Villasenor                               (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): CAYDON USA PROPERTY GROUP, LLC, a Delaware Limited Liability Company
   under: ☐ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☑ other (specify): Limited Liability Company
4. ☐ by personal delivery on (date):

**EXHIBIT 3**
Page 3

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# EXHIBIT 4

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**04/27/2023** at 08:27:56 AM
Clerk of the Superior Court
By Armando Villasenor,Deputy Clerk

1  MARA W. ELLIOTT, City Attorney
   PAIGE E. FOLKMAN, Assistant City Attorney
2  DAVID E. MILLER, Deputy City Attorney
   California State Bar No. 174469
3        Office of the City Attorney
         Community Justice Division/Nuisance Abatement Unit
4        1200 Third Avenue, Suite 700
         San Diego, California 92101-4103
5        Telephone: (619) 533-5500
         Fax: (619) 533-5505
6        MillerDE@sandiego.gov

7  Attorneys for Plaintiffs                                    No Fee GC § 6103

8                  SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF SAN DIEGO

10  THE PEOPLE OF THE STATE OF              Case No. 37-2023-00017820-CU-MC-CTL
    CALIFORNIA and CITY OF SAN DIEGO,
11  a municipal corporation,                UNLIMITED JURISDICTION

12                  Plaintiffs,             COMPLAINT FOR INJUNCTION, CIVIL
                                            PENALTIES AND OTHER EQUITABLE
13          v.                              RELIEF

14  CAYDON SAN DIEGO PROPERTY LLC, a
    Delaware Limited Liability Company;     (1) MAINTENANCE OF A PUBLIC
15  CAYDON USA HOLDING LLC, a Texas             NUISANCE (CALIFORNIA CIVIL
    Foreign Limited Liability Company and a     CODE SECTIONS 3479 AND 3480);
16  Delaware Limited Liability Company;         AND
    CAYDON USA PROPERTY GROUP, LLC, a
17  Delaware Limited Liability Company;     (2) VIOLATIONS OF THE SAN DIEGO
    MATTHEW HUTTON, Receiver and Manager       MUNICIPAL CODE
18  of CAYDON USA PROPERTY GROUP
    HOLDINGS PTY LTD; and
19  DOES 1 through 50, inclusive,

20                  Defendants.

21

22          Plaintiffs, the People of the State of California and City of San Diego, a municipal

23  corporation, appearing by and through their attorneys, Mara W. Elliott, City Attorney, and David

24  E. Miller, Deputy City Attorney, allege the following based upon information and belief:

25                          **JURISDICTION AND VENUE**

26          1. Plaintiffs, the People of the State of California and City of San Diego, a municipal

27  corporation (Plaintiffs), by this action and pursuant to California Code of Civil Procedure sections

28  526 and 731 and San Diego Municipal Code (Municipal Code or SDMC) sections 12.0202 and

                                            1
            COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF

EXHIBIT 4
Page 1

1  121.0311, seek a preliminary injunction and permanent injunction prohibiting Defendants from

2  using or maintaining a property in violation of state and local ordinance provisions and as a

3  public nuisance, which is a threat to the health, safety, and welfare of the public. Plaintiffs also

4  seek to obtain civil penalties, costs, and other equitable relief for Defendants' violations of the

5  law.

6      2.  The omission or commission of acts and violations of law by Defendants as alleged in

7  this Complaint occurred within the City of San Diego, in the State of California. Defendants at all

8  times mentioned in this Complaint have transacted business within the City of San Diego or are

9  residents of San Diego County, within the State of California, or both.

10     3.  The property where the acts and practices described in this Complaint were performed

11 is in the City of San Diego.

12                          **THE PARTIES**

13     4.  Plaintiff the People of the State of California brings this action by and through Mara

14 W. Elliott, City Attorney for the City of San Diego.

15     5.  Plaintiff City of San Diego is a municipal corporation and a charter city, organized and

16 existing under the laws of the State of California.

17     6.  Defendant CAYDON SAN DIEGO PROPERTY LLC (CAYDON SD), a Delaware

18 Limited Liability Company, at all times relevant to this action, was and is the owner of record of

19 the real property located at 1102-1122 Fourth Avenue, 1101-1121 Third Avenue, and 310-344 C

20 Street, San Diego, California 92101 (Property), where state and local law violations and a public

21 nuisance exist.

22     7.  Defendant CAYDON USA HOLDING LLC (CAYDON HOLDING), a Texas

23 Foreign Limited Liability Company and a Delaware Limited Liability Company, is the sole

24 Member of CAYDON SD, the owner of record of the Property.

25     8.  Defendant CAYDON USA PROPERTY GROUP LLC (CAYDON USA), a Delaware

26 Limited Liability Company, is the sole Member of CAYDON HOLDING.

27     9.  Defendant MATTHEW HUTTON is the Receiver and Manager of CAYDON USA

28 PROPERTY GROUP HOLDINGS PTY LTD, the sole Member of CAYDON USA.

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF
EXHIBIT 4
Page 2

10. Defendants DOES 1 through 50, inclusive, are sued as fictitious names, under the provisions of California Code of Civil Procedure section 474, their true names and capacities are unknown to Plaintiffs. Plaintiffs are informed and believe that each Defendant, DOES 1 through 50, is either responsible, in whole or in part, for the violations and conduct alleged, or has, or claims to have, an interest in the Property, the exact nature of which is unknown. When the true names and capacities are ascertained, Plaintiffs will seek leave of court to amend this Complaint and to insert in lieu of such fictitious names the true names and capacities of the fictitiously named Defendants.

11. At all relevant times to this action, all Defendants and DOES 1 through 50, and each of them, were and are agents, principals, servants, lessors, lessees, employees, partners, associates or joint venturers of each other and at all times were acting within the course, purpose and scope of said relationship and with the authorization or consent of each of their co-defendants.

## PROPERTY

12. The property where the violations of state and local ordinances are being maintained and the nuisance is occurring is 1102-1122 Fourth Avenue, 1101-1121 Third Avenue, and 310-344 C Street, San Diego, California 92101, also identified as Assessor's Parcel Numbers 533-521-04-00, 533-521-05-00, and 533-521-08-00 according to Document No. 2019-0608307 recorded in the San Diego County Recorder's Office on December 27, 2019 (Grant Deed).

13. The legal description of the Property is:

All that certain real property situated in the County of San Diego, State of California, described as follows:

Parcel 1:
Lots E and F in Block 16 of Horton's Addition, in the City of San Diego, County of San Diego, State of California, according to Map thereof filed in the Office of the County Recorder of San Diego County.

Parcel 2:
Lots G and H in Block 16 of Horton's Addition, in the City of San Diego, County of San Diego, State of California, according to Map thereof filed in the Office of the County Recorder of San Diego County.

. . . . .

. . . . .

---

3

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF

EXHIBIT 4
Page 3

Parcel 3:
Lot I in Block 16 of Horton's Addition, in the City of San Diego,
County of San Diego, State of California, according to Map thereof
by L.L. Lockling, filed in the Office of the County Recorder of
San Diego County.

Assessor's Parcel Number: 533-521-04, -05, and -08.

14. Per the Grant Deed, the Property was acquired by CAYDON SD on or about December 13, 2019.

15. The Property is located within the Centre City Planned District zone in the downtown area of the City of San Diego.

16. The Property was originally developed in 1926 with an assembly use building, now known as the California Theater, and an eight-story mixed use building. The three buildings at the Property have stood vacant for decades.

## FACTUAL ALLEGATIONS

17. For approximately three years, Defendants have maintained the Property in violation of the Municipal Code and as a public nuisance that poses an imminent threat to the health, safety, and welfare of the occupants, first responders, and the general public. It is a refuge for transients, a haven for teen skaters, and a blight on the neighborhood negatively affecting local businesses. The abandoned buildings at the Property are structurally unsound; filled with hazardous materials, such as asbestos, lead, and biological waste; and have cracked, unstable exterior ornamentation that falls to the sidewalk endangering pedestrians below.

18. On or about November 9, 2016, Masek Consulting Services, Inc. prepared an Asbestos, Lead, and Miscellaneous Toxic Materials Survey Report (Toxic Material Report) addressing the hazardous materials at the Property for the previous owner of the Property.

19. The Toxic Material Report identified significant quantities of asbestos, lead, and other toxic materials existing at the Property:

- Approximately 4,500 square feet of pipe and tank insulation in horrible condition ("significantly damaged" using the AHERA categories of good, damaged, and significantly damaged);

- Significantly damaged friable theater curtain of roughly 1,500 square feet;

4

1     • Lead-based paint (XRF readings greater than or equal to 1.0 mg/cm2), lead-glazed

2   ceramic tile, and paint which the City of San Diego requires be handled using lead-safe work

3   practices (XRF readings greater than or equal to 0.5 mg/cm2); and

4     • About 340 mercury-containing fluorescent light tubes, 170 ballasts which likely

5   contain PCBs, 12 thermostats with mercury switches, seven transformers and seven oil-filled

6   switches, a compressed gas canister/tank, and a radioactive exit sign.

7     20. On or about October 25, 2018, A.B. Court & Associates Prepared a Structural

8   Condition Assessment Report (Structural Report) for Defendants. The Structural Report included

9   findings:

10    • Severely deteriorated structural systems, including severely weakened and

11  corroded roof trusses supporting the auditorium roof, present a significant near-term and long-

12  term safety risk and require prompt shoring and repair or demolition to avert potential collapse;

13    • Exterior cast stone ornamentation with widespread cracking and delamination is a

14  falling hazard;

15    • The connected buildings are poorly tied together and likely to suffer heavy damage

16  and partial collapse where they abut and interconnect; and

17    • Potential failure of even one heavily corroded tension strut could result in a zipper

18  effect with adjacent members failing until a more global failure of the roof structure occurs. Such

19  a failure would likely have disastrous consequences in terms of loss of the heavy concrete roof

20  structure, potential loss or heavy damage to the balcony, severe damage to columns, loss of

21  hollow clay tile infill from the walls, loss of the concrete parapets, and severe risk to pedestrians

22  and others near to the building due to falling hazards. The roof trusses should be considered an

23  immediate and urgent safety priority.

24    21. On a date unknown to Plaintiffs, but prior to December 13, 2019, Defendants received

25  a copy of the Toxic Material Report.

26  .   .   .   .   .

27  .   .   .   .   .

28  .   .   .   .   .

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF

EXHIBIT 4
Page 5

22. On or about December 13, 2019, after commissioning the Structural Report and receiving the Toxic Material Report, Defendants purchased the Property with full knowledge of the structural deficiencies and hazardous materials at the Property.

23. Since the date Defendants purchased the Property, the San Diego Police Department (SDPD) has received 68 calls for service to the Property to investigate criminal offenses including battery, assault with a deadly weapon, theft, exhibiting a deadly weapon, and malicious mischief. These calls resulted in 440 out of service hours for law enforcement.

24. On or about July 8, 2020, the City of San Diego's Code Enforcement Division (CED) received a citizen complaint stating that the Property was vacant, abandoned, and a public nuisance, littered with a significant amount of trash and debris. The complaint also stated that the fence was falling over.

25. On or about July 9, 2020, CED Senior Combination Inspector Bryan Monaghan (SCI Monaghan) inspected the Property and observed several violations of the Municipal Code, including broken and dilapidated fencing (SDMC § 142.0380); barbed wire on fencing (SDMC § 142.0360); unsecured and broken windows and doorways as well as holes in the north wall of the vacant structures (SDMC § 54.0306); trash, litter, and debris around the Property (SDMC § 54.0208); and a vacant lot at the Property being used as a paid parking lot without required permits (SDMC § 156.0308). SCI Monaghan called Defendants' representative, Khaled Noun (Noun), to inform him of the Municipal Code violations existing at the Property and advised that Defendants must fix all Municipal Code violations.

26. Noun assured SCI Monaghan that Defendants would begin fixing the violations immediately. SCI Monaghan requested that Noun contact him when he was ready to schedule a compliance inspection.

27. On or about July 16, 2020, SCI Monaghan and CED Zoning Investigator Jose Bautista (ZI Bautista) inspected the exterior of the Property. They observed rubbish and debris, holes and transient entry points in the fence and exterior walls, a large hole in the north wall exposing an elevator shaft, graffiti covering the building and windows, barbed wire on the fencing, and Oriented Strand Board (OSB) covering certain portions of the building.

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF
EXHIBIT 4
Page 6

28. SCI Monaghan emailed Noun and two other of Defendants' representatives, Blake Schoenberg (Schoenberg) and Alex Beaton (Beaton). SCI Monaghan informed them of the Municipal Code violations observed at the Property and explained that the dangerous violations must be remediated immediately. SCI Monaghan provided a copy of the City's regulations for how to board and secure a vacant property, explained that OSB may not be used to board a vacant structure, and warned that the exposed elevator shaft was an immediate public safety hazard.

29.  On or about July 20, 2020, ZI Bautista emailed Schoenberg, Noun, and Beaton requesting an update on the remediation effort. ZI Bautista also reiterated that the vacant lot cannot be used as a paid parking lot without a permit and that all entry points must be secured.

30. On or about July 23, 2020, Schoenberg emailed ZI Bautista stating that Defendants had temporarily secured the elevator shaft. Schoenberg stated he would later permanently secure it according to City regulations; however, he never did.

31. On or about July 24, 2020, SDPD Officer Drake Lasley (Officer Lasley) emailed Schoenberg, Noun, and Beaton, requesting that Defendants post "No Trespassing" signs on the fence and all entrances to preclude unauthorized entry and inquired about the condition of the building.

32. On or about July 30, 2020, Schoenberg emailed Officer Lasley stating that there is asbestos in the building, but that there is no reason to believe it is airborne. The only structural concerns Schoenberg mentioned were that wood areas might be unsound. Schoenberg did not mention the concerns identified in the findings of the Structural Report or the Toxic Material Report.

33. On or about August 6, 2020, Officer Lasley emailed Schoenberg and Beaton to explain that SDPD officers could not enter the Property because of the extreme dangers presented by the structural deficiencies and hazardous materials within the buildings.

34. On or about August 6, 2020, ZI Bautista inspected the Property from the public right-of-way (PROW) and observed no change in the conditions at the Property. The Municipal Code violations remained. Additionally, the opening to the elevator shaft that Schoenberg had stated was temporarily secured was not secured.

35. On or about August 19, 2020, ZI Bautista issued a Notice of Abatement, posted it at the Property and mailed a copy to Defendants. The Notice of Abatement listed all Municipal Code violations observed at the Property; identified remediation measures required, including boarding and securing the buildings as required by the Municipal Code, removing barbed wire fencing, and disposing of all trash and debris; and explained that "[t]he structure(s) pose(s) a serious threat to the public's health and safety and are hereby declared to be a public nuisance in accordance with San Diego Municipal Code (SDMC) Section 54.0301 and California Health and Safety Code Section 17920.3." A compliance deadline was set for September 2, 2020.

36. The violations listed in the Notice of Abatement include: broken and dilapidated fencing (SDMC § 142.0380); barbed wire on fencing (SDMC § 142.0360); unsecured and broken windows and doorways as well as holes in the north wall of the vacant structures (SDMC § 54.0306); trash, litter, and debris around the Property (SDMC § 54.0208); vacant lot at the Property being used as a paid parking lot without required permits (SDMC § 156.0308); and failure to comply with the Land Development Code (SDMC § 121.0302).

37. On or about August 20, 2020, ZI Bautista emailed Schoenberg, Noun, and Beaton explaining that he posted the Notice of Abatement at the Property and informing them that a compliance inspection would occur on or after the compliance deadline stated in the Notice of Abatement.

38. On or about August 25, 2020, ZI Bautista emailed Schoenberg, Noun, and Beaton to inform Defendants that the City had been receiving reports of an increase in graffiti at the Property. ZI Bautista asked that the graffiti be removed as soon as possible.

39. On or about September 2, 2020, ZI Bautista emailed Schoenberg, Noun, and Beaton to remind them that the compliance deadline in the Notice of Abatement was the next day.

40. On or about September 8, 2020, ZI Bautista inspected the Property and observed that all Municipal Code violations remained uncorrected. Defendants had not complied with the Notice of Abatement. ZI Bautista emailed Schoenberg, Noun, and Beaton to advise them of the results of his inspection. Noun called ZI Bautista and said he would have the barbed wire and graffiti removed.

8

41. On or about September 10, 2020, ZI Bautista emailed Noun and Schoenberg and requested an update on the status of the remediation, including removing the barbed wire, graffiti, trash, broken fencing, and securing the buildings.

42. On or about December 7, 2020, CED Senior Zoning Investigator Ollie Shepherd conducted an inspection of the Property and observed that all Municipal Code violations were still present.

43. On or about January 1, 2022, a video was posted on YouTube (https://www.youtube.com/watch?app=desktop&v=HBi85eeUdkI) showing two youths entering the unsecured dangerous Property on the evening of December 31, 2021, and exploring the interior of the buildings, exposing themselves to the hazardous materials.

44. On or about April 20, 2022, CED Combination Inspector Val Sanchez (CI Sanchez) met with Deputy Fire Marshal Robert Marshall (DFM Marshall) and Fire Marshal Anthony Tosca (FM Tosca). DFM Marshall informed CI Sanchez that the Property was currently the highest priority for the San Diego Fire-Rescue Department (SDFD) because there were serious concerns about the risk of fires inside the Property due to the transient presence and the dangerous interior conditions.

45. On or about April 27, 2022, CI Sanchez inspected the Property from the PROW and observed multiple Municipal Code violations at the Property: The Municipal Code violations mirrored those observed by SCI Monaghan almost 2 years earlier.

46. On or about May 3, 2022, ZI Bautista emailed Beaton, Schoenberg, and Noun and informed them that the building remained unsecure, and the City continued to receive complaints of homeless and transient individuals entering and residing in the buildings. ZI Bautista also requested a Property inspection be scheduled as soon as possible.

47. On or about May 3, 2022, Emma Alexander (Alexander), the prior Vice President and Chief Operating Officer of Defendant CAYDON USA, sent two emails to ZI Bautista, CI Sanchez, and Schoenberg. Alexander wrote that the City staff will need "full [Personal Protective Equipment] to go inside the buildings . . . it's not safe in a lot of areas." Alexander further wrote, "The entirety of the building inside has asbestos and lead which is why full hazmat [protection] is

9

1   required. The stage and a number of areas including and anything above the first floor cannot be

2   accessed as it's unsafe. . . . Caydon's intention is to demolish the whole building. . . . It is

3   structurally unsound and certainly not habitable."

4       48.  On or about May 3, 2022, and again on May 5, 2022, CI Sanchez requested copies of

5   asbestos and lead reports from Alexander.

6       49. On or about May 9, 2022, CI Sanchez and SCI Monaghan conducted another

7   inspection of the Property. They confirmed that the buildings were not properly boarded and

8   secured and that transients were occupying the buildings. All other Municipal Code violations

9   remained uncorrected.

10       50. On or about May 11, 2022, ZI Bautista emailed an Inspection Official Notice to

11   Alexander notifying her that an inspection of the Property would be conducted on May 25, 2022.

12       51. On or about May 12, 2022, CI Sanchez emailed Alexander and relayed the results of

13   his May 9, 2022, inspection and requested that Defendants' management team or contractors

14   attend the May 25, 2022, inspection. CI Sanchez also requested that the buildings be cleared of

15   the occupants prior to boarding and securing them.

16       52. On or about May 18, 2022, CI Sanchez emailed Alexander and Schoenberg indicating

17   that he would like to discuss Defendants' plan to clear and resecure the Property with Defendants'

18   contractors at the May 25, 2022 inspection. CI Sanchez also reiterated his request for a copy of

19   the asbestos and lead reports.

20       53. On or about May 19, 2022, in response to a question from Alexander asking why the

21   SDPD can't clear the building, CI Sanchez informed Alexander that it is the owner's

22   responsibility to clear the building prior to resecuring it. CI Sanchez further wrote that Alexander

23   should coordinate` with the SDPD so they can have community resources on site on the clearing

24   date to meet and offer services to the transients.

25       54. On or about May 23, 2022, Schoenberg emailed a link to the 2016 Toxic Material

26   Report to CI Sanchez.

27       55. On or about May 25, 2022, Schoenberg met CI Sanchez, ZI Bautista, FM Tosca, DFM

28   Marshall, and Deputy Fire Marshal Michael Sugich (DFM Sugich) at the Property. City staff

1  observed numerous dangerous Municipal Code and California Fire Code violations at the

2  Property. City staff explained the Municipal Code and California Fire Code violations to

3  Schoenberg. While at the Property, CI Sanchez observed several individuals going in and out of

4  one of the buildings through a breached opening in the northwest side of the building. CI Sanchez

5  spoke to one of the individuals leaving the building. That individual told CI Sanchez that

6  approximately 20-30 people were living in the 8-story building and another five or six lived on

7  the west side of the Property. The individual further stated that fires were being started inside the

8  buildings by the occupants to keep them warm. The individual also informed CI Sanchez that he

9  had observed groups of teenagers enter the building and access the upper floors to spray paint

10  graffiti.

11  56. On or about May 25, 2022, Schoenberg emailed a copy of the 2018 Structural Report

12  to ZI Bautista, CI Sanchez, and other City staff. Later the same day, CI Sanchez informed

13  Alexander, Schoenberg, and Beaton that on multiple occasions, including that morning, City staff

14  confirmed that transients were living at the Property and that due to Defendants' failure to comply

15  with the Notice of Abatement, CED was referring the case to the City Attorney's office for

16  enforcement.

17  57. On or about May 26, 2022, based on the nature and extent of the conditions and

18  violations observed at the Property and those identified in the Structural Report and Toxic

19  Material Report, FM Tosca determined that the Property was unsafe as the hazardous conditions

20  present imminent danger to the building occupants and the general public. DFM Marshall and FM

21  Tosca, pursuant to California Fire Code section [A]111.2, "red tagged" the building with warning

22  signs stating, "DO NOT USE BY ORDER OF THE FIRE MARSHAL…UNSAFE BUILDING."

23  58. Later that day, DFM Sugich emailed an SDFD Inspection Report from the May 25,

24  2022, inspection to Alexander, Beaton, and Schoenberg indicating that all California Fire Code

25  violations previously observed at the Property remained uncorrected. The Inspection Report

26  included a requirement that Defendants implement a 24/7 fire watch (Fire Watch) for the

27  building. Fire Watch requires regular patrol of the Property conducted by personnel stationed

28  .   .   .   .   .

1    onsite and trained to detect and immediately report smoke and early signs of fire at the Property

2    to the fire department.

3        59. On or about June 1, 2022, CI Sanchez again informed Alexander and Schoenberg that

4    the case was being referred to the City Attorney's Nuisance Abatement Unit for further

5    enforcement action because of Defendants' failure to address the serious life safety and fire

6    danger the buildings pose to the occupants, to fire crews and to the neighboring properties. CI

7    Sanchez demanded that Defendants immediately comply with the Fire Marshal's safety

8    requirements, clear the buildings, resecure all the openings, repair the perimeter fencing, and

9    maintain the building in a safe and secure manner.

10       60. Later that day, Alexander responded to CI Sanchez, asking, "[C]an't the Fire brigade

11   clear the building (via smoke/lights/noise etc) . . . ?"

12       61. On or about June 3, 2022, FM Tosca responded to Alexander's email that the SDFD

13   cannot clear the building: Clearing is the Property owner's responsibility.

14       62. On or about June 6, 2022, CI Sanchez, DFM Sugich, FM Tosca, and DFM Marshall

15   met with Alexander and Beaton and explained that the buildings must be cleared of all occupants,

16   hazardous materials must be removed, the building must be properly secured, and all structural

17   issues must be fixed or the buildings must be demolished. FM Tosca explained that SDFD had

18   serious concerns regarding catastrophic fire and the hazardous materials. FM Tosca also relayed

19   concerns from the SDPD of ongoing nuisance activity, including broken windows, falling

20   materials, and constant calls for service at the Property. CI Sanchez again told Defendants'

21   representatives that the case had been referred to the Office of the City Attorney.

22       63. On or about June 13, 2022, CI Sanchez met with Alexander and Beaton. CI Sanchez

23   reiterated the concerns and requirements conveyed during the June 6, 2022, meeting. Alexander

24   asked why SDPD could not just clear the buildings. She was again told that it is the owner's

25   responsibility to clear, board, and secure the buildings. Beaton claimed that a contractor was

26   hired, and the buildings would be cleared on June 16, 2022.

27   .   .   .   .   .

28   .   .   .   .   .

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF
EXHIBIT 4
Page 12

64. On or about June 14, 2022, Schoenberg emailed Alexander, Beaton, CI Sanchez, DFM Marshall, DFM Sugich, and FM Tosca that the building clearing and resecuring would occur on June 16, 2022, at 9:00 a.m.

65. On or about June 16, 2022, CED Zoning Investigator Raunja Robinson (ZI Robinson) went to the Property to observe the clearing and securing of the buildings. He did not observe any contractors or activity at the Property. ZI Robinson later learned that the clearing and securing had been cancelled.

66. On or about June 29, 2022, CI Sanchez and City of San Diego Development Services Department (DSD) Senior Structural Engineer Miguel Sinclair (SSE Sinclair) went to the Property to conduct a structural assessment. Due to interior conditions, SSE Sinclair could only perform a limited exterior inspection of the buildings at the Property. SSE Sinclair observed conditions consistent with those identified in the 2018 Structural Report. While present at the Property, CI Sanchez observed SDPD officers onsite. The SDPD officers were removing individuals entering the buildings through a breached opening on C Street.

67. On or about July 1, 2022, Alexander emailed DFM Sugich asking if the City would pay for the 24/7 Fire Watch. DFM Sugich responded that having a Fire Watch is the responsibility of the property owner and that failure to put the Fire Watch in place by July 12, 2022, would result in a $300 daily fine.

68. On or about July 5, 2022, SDPD Officer Marlon Estepa (Officer Estepa) received a report of newly damaged windows at the Property and a possible gunshot coming from inside the buildings and complaints about transients entering the dangerous buildings at the Property.

69. On or about July 8, 2022, ZI Robinson inspected the Property and observed occupants breaking the windows of the 8-story building at the Property and glass falling to the sidewalk below.

70. On or about July 11, 2022, NBC affiliate San Diego 7 ran a news segment entitled "San Diego's Seedy California Theatre Driving Businesses Out of Downtown." In the news segment, local business owners complain about how the condition of the Property has negatively affected their businesses. The business owners' complaints include an increase in robberies,

1  employees quitting because they don't feel safe at night, and having to close their businesses

2  early due to safety concerns.

3      71. On or about July 12, 2022, DFM Sugich conducted a follow-up inspection and

4  observed that all California Fire Code violations remained uncorrected. DFM Sugich also

5  observed that Fire Watch was not present at the Property. SDPD received reports of

6  approximately four juvenile skateboarders entering the building from the north side at about

7  3:45 p.m. City staff also met with Defendants' representatives at the Property and again requested

8  that Defendants clear and secure the buildings and establish new barriers around the Property to

9  protect pedestrians from objects being thrown from windows and falling off the buildings. CI

10  Sanchez also observed numerous individuals entering and leaving the buildings. One of the

11  individuals told CI Sanchez that he had gone inside because he heard a woman calling for help

12  but could not find her.

13      72. On or about July 13, 2022, DFM Sugich emailed an inspection report detailing the

14  violations observed during his July 12, 2022, inspection to Alexander, Beaton, and Schoenberg.

15  DFM Sugich further wrote, "We visited the site today and fire watch was not in place. . . . If the

16  fire watch is not in place by Thursday morning we will start a daily fine of $300. I want you to be

17  aware that these fines can go up to $2,500 a day per fine…." On the same day, a security officer

18  from the City Administrative Building also reported seeing 15 skateboarders entering the

19  buildings at the Property from the C Street side.

20      73. On or about July 15, 2022, SCI Monaghan issued Defendants an Administrative

21  Citation Warning (ACW) in which he identified Municipal Code violations at the Property,

22  including violations of sections 129.0702 (failure to obtain required Public Right-of-Way Permit)

23  and 54.0306 (Abandoned Property Regulations - failure to properly board and secure; failure to

24  remove litter, waste, rubbish, solid waste, liquid waste, and debris; and failure to maintain the

25  property in accordance with maintenance standards in Municipal Code section 54.0307). The

26  ACW also required Defendants to extend the perimeter of fencing into the public right-of-way to

27  protect pedestrians from falling material. A compliance date of July 25, 2022, was set in the

28  ACW.

74. On or about July 15, 2022, SCI Monaghan emailed Beaton, Alexander, and Grant Martin, another representative of Defendants, informing them of the ACW, the Municipal Code violations, the safety barrier and Public Right-of-Way and Traffic Control Permit (PROW/TCP) requirements, and the compliance date of July 25, 2022. A PROW/TCP and the associated City review is necessary to establish requirements for a safe and code compliant pedestrian path of travel that will protect the public from falling building elements and debris and limit potential impacts on travel corridors.

75. On or about July 22, 2022, DFM Sugich, while at the Property, stopped three twelve-year-old boys from entering the extremely dangerous Property.

76. On or about July 26, 2022, CI Sanchez observed smoke coming from a mezzanine on the second floor of the Property. That same day, DFM Sugich inspected the Property and observed that the required Fire Watch was still not present. After his inspection, DFM Sugich emailed Alexander, Beaton, and Schoenberg and informed them of the smoke observed at the Property and the three 12-year-old boys he stopped from entering the buildings. DFM Sugich demanded that Defendants immediately station Fire Watch at the Property as the threat to the public worsened each day.

77. On or about July 27, 2022, City of San Diego Development Services Director Elyse Lowe (Director Lowe) met with Defendants' representatives and informed them that they must submit plans and an application to demolish the buildings at the Property by August 5, 2022, create a falling hazard protection zone around the Property to protect pedestrians, and obtain the PROW/TCP as previously ordered.

78. On or about August 5, 2022, CED Zoning Investigator Christopher Penman (ZI Penman) inspected the Property. ZI Penman observed that all Municipal Code violations remained uncorrected, including the presence of barbed wire; unsecured doors, windows, and holes in the exterior of the buildings large enough for persons to enter; significant amounts of graffiti on the exterior wall and windows; and garbage piled up on the north side of the buildings.

79. On or about August 9, 2022, ZI Penman again inspected the Property. He observed no improvement in the illegal conditions. The Fire Watch was still not present.

1       80. On or about August 10, 2022, Director Lowe sent a certified letter to Alexander,

2  stating that Defendants had failed to submit the required demolition plans, application, and

3  PROW/TCP and establish the required fall hazard protection zone. Director Lowe reiterated the

4  serious hazard the Property posed to the public.

5       81. On or about August 11, 2022, DFM Sugich conducted another compliance inspection

6  of the Property. He observed no improvement. Fire Watch was still not patrolling the Property.

7       82. On or about August 12, 2022, as the Property was too dangerous to enter, the SDPD

8  sent a drone into the theater to observe the conditions inside. In the video numerous structural and

9  life safety issues are visible, including collapsed portions of the walls, ceilings, and mezzanine;

10  fallen ornamentation; and large chunks of the interior façade and ceiling hanging and waiting to

11  fall.

12       83. On or about August 30, 2022, DFM Sugich conducted an exterior inspection of the

13  Property. The Fire Watch was still not present.

14       84. On or about August 31, 2022, DFM Sugich conducted an exterior inspection of the

15  Property. DFM Sugich observed that a Fire Watch was present for the first time at the Property.

16  All other violations remained uncorrected. DFM Sugich emailed an inspection report to

17  Alexander and Beaton wherein he stated that the building was unsafe for occupants, based on the

18  structural assessment and toxic materials present. He ordered that Defendants vacate all occupants

19  from the building immediately and secure the structure to prevent reentry.

20       85. On or about September 8, 2022, representatives of the Office of the City Attorney and

21  of CED met with Defendants' counsel and Defendant Hutton to discuss the violations present at

22  the Property and the remediation measures required to comply with the Municipal Code,

23  including clearing the Property, boarding and security, maintaining a fenced perimeter around the

24  Property to protect pedestrians from falling hazards, and obtaining the PROW/TCP.

25       86. On or about September 16, 2022, an SDFD officer observed two transients entering

26  the Property through an opening in the still unsecure and unsafe building.

27       87. On or about September 20, 2022, a fire started inside one of the buildings at the

28  Property. Though Fire Watch was on site, they did not call 911. Five fire engines, two fire trucks,

1  two Battalion Chief Command vehicles, and one ambulance were ultimately dispatched to the

2  Property to address the fire. ZI Penman went to the Property following the fire and observed that

3  the Municipal Code violations, including barbed wire fencing, unsecured openings in the

4  buildings, and graffiti, were still present. A Deputy City Attorney informed Defendants, through

5  counsel, of the fire at the Property and the failure of Defendants' Fire Watch to call 911.

6  88. On or about September 29, 2022, Defendants, through counsel, were reminded that

7  they must submit an application for the PROW/TCP for fencing around the Property to protect

8  pedestrians from fall hazards.

9  89. On or about October 14, 2022, ZI Penman inspected the exterior of the Property and

10  observed that the Municipal Code violations remained. Defendants were again reminded that a

11  PROW/TCP application must be submitted.

12  90. On or about October 28, 2022, ZI Penman inspected the exterior of the Property and

13  observed that the Municipal Code violations remained.

14  91. On or about October 31, 2022, Defendants were again informed that they must obtain

15  a PROW/TCP and that a permit application could easily be opened online.

16  92. On or about November 2, 2022, more than two years after the City's order to

17  Defendants to board and secure the Property, Defendants began to clear the building of

18  occupants.

19  93. On or about November 16, 2022, the Deputy City Attorney assigned to the case sent

20  an email to defense counsel stating that it is "essential" that Defendants submit a PROW/TCP

21  application immediately. "[A]rrangements [have been made] to expedite the permit review and

22  issuing process. Unless and until plans are submitted and reviewed, the extent of the measures

23  your client will need to take to address pedestrian safety and traffic control cannot be fully

24  assessed."

25  94. On or about November 18, 2022, boarding and securing of the Property was

26  completed. The serious dangers presented by asbestos, lead, human and animal waste, trash,

27  mercury, oil, gas canisters, and structural hazards, such as the collapsing ceilings and walls, loose

28  exterior façade, and corroded roof trusses, remain unabated.

1    95. On or about November 28, 2022, and again on December 12, 2022, the assigned

2    Deputy City Attorney again told Defendants to apply for a PROW/TCP.

3    96. On or about December 12, 2022, Defendants again were told that they must submit the

4    PROW/TCP application.

5    97. On or about January 10, 2023, almost six months from the date the City first informed

6    Defendants that a permit was required, Defendants submitted a PROW/ TCP permit application.

7    98. For a period of more than three years, Defendants have maintained the Property with

8    structurally unsound buildings filled with hazardous materials and waste; unpermitted, broken,

9    and dilapidated fencing in the public right of way with trash, litter and debris accumulating inside

10   the fencing; barbed wire on portions of the fence; significant amount of graffiti covering exterior

11   walls and windows; portions of the exterior façade cracked and threatening to fall onto the

12   sidewalks below; and crumbling interior walls and ceilings.

13   99. Despite the hazardous conditions, Defendants left the buildings accessible to the

14   general public though unsecured doorways, broken windows, and holes in the façade.

15   100. The dangerous Property became a shelter for transients and a venue for skateboarders,

16   young explorers, and graffiti artists. Multiple individuals entered and/or lived in the buildings and

17   were exposed to asbestos, lead, other hazardous materials, and the dangerous and unsanitary

18   conditions inside.

19   101. Over an approximately three-year period, Plaintiffs emailed, spoke to, and met with

20   Defendants to explain the Municipal Code violations at the Property, the dangers to the general

21   public and occupants, and the remediation measures required to abate the violations. Plaintiffs

22   issued Administrative Warnings, Administrative Citations, and a Notice of Abatement to

23   Defendants demanding Defendants remediate the dangerous nuisance conditions at the Property.

24   102. Well aware of the danger the Property poses to the community, Defendants failed to

25   comply with any of the City's mandates until after they were informed that the City Attorney

26   would review the case for potential enforcement actions. Even then, Defendants failed to address

27   the underlying structural and hazardous materials dangers at the Property.

28   .   .   .   .   .

103.  The Property remains a public nuisance and fire hazard as the buildings remain structurally unsound with severely deteriorated and weakened structural members, which per the Structural Report, commissioned by Defendants, presents a significant and immediate safety risk and collapse hazard.

104.  The cracked and delaminated exterior cast stone ornamentation will continue to fall, posing an imminent threat to the lives of pedestrians, the surrounding community, and first responders.

105.  Plaintiffs have no adequate remedy at law. Defendants are blatantly and willfully in violation of state and local laws and will continue to maintain the dangerous condition of the Property in the future unless the Court enjoins and prohibits such conduct. Absent injunctive relief, the People of the State of California and the City of San Diego will be irreparably harmed, and the ongoing violations will continue to harm the public, safety, and welfare of the citizens of San Diego.

# I

## FIRST CAUSE OF ACTION

### MAINTENANCE OF A PUBLIC NUISANCE IN VIOLATION OF CALIFORNIA CIVIL CODE SECTIONS 3479 AND 3480 ALLEGED BY PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA AGAINST ALL DEFENDANTS

106.  Plaintiff, the People of the State of California incorporates by reference all allegations in paragraphs 1 through 105 of this Complaint as though fully set forth here in their entirety.

107.  California Civil Code sections 3479 and 3480 provide:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance. . . . A public nuisance is one which affects . . . an entire community or neighborhood. . . .

108.  California Civil Code section 3491 provides for the methods by which public nuisances such as those alleged in this case may be abated. California Civil Code section 3491 indicates that the remedies against a public nuisance are indictment or information, a civil action,

1    or abatement. California Civil Code section 3494 states that "[a] public nuisance may be abated

2    by any public body or officer authorized thereto by law."

3        109. California Code of Civil Procedure section 731 authorizes a city attorney to bring an

4    action to enjoin or abate a public nuisance. It provides, in relevant part: "A civil action may be

5    brought in the name of the people of the State of California to abate a public nuisance . . . by the

6    city attorney of any town or city in which such nuisance exists."

7        110. Since at least July 9, 2020, Defendants have maintained structurally unsound

8    buildings filled with hazardous materials and waste at the Property.

9        111. Despite the clearly hazardous conditions of the Property, Defendants left the buildings

10   accessible to the general public.

11       112. While accessible, the structurally unsound buildings with their toxic contents became

12   a shelter for transients and a venue for skateboarders, young explorers, and graffiti artists. All

13   who entered the buildings were potentially exposed to asbestos, lead, and other hazardous

14   materials. All were at risk of serious injury or death due to the dangers, such as falling

15   ornamentation, of the structurally unsound buildings at the Property and the real possibility of

16   collapse.

17       113. Local businesses also experienced harmful effects, such as loss of business, from the

18   hazardous and unsanitary condition of and the criminal activity at the Property.

19       114. The criminal and nuisance activity at the Property drained SDPD resources, requiring

20   a significant number of SDPD responses and occupying more than 400 hours of SDPD out of

21   service time.

22       115. Despite clearing and boarding the buildings at the Property, the structurally unsound

23   buildings remain a hazard to pedestrians, first responders, and the general public.

24       116. Defendants have had ample time to comply with the City's warnings, citations, Notice

25   of Abatement, and order to repair or demolish the buildings but have failed to timely comply.

26       117. Defendants' maintenance of the Property in the condition described above constitutes

27   a continuing public nuisance as defined by California Civil Code sections 3479 and 3480.

28   .   .   .   .   .

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF
EXHIBIT 4
Page 20

1  Defendants' Property adversely affects the entire community and neighborhood. The Property as

2  it currently exists is injurious to the health, safety, and welfare of the residents and families who

3  live in the community and interferes with the comfortable use and enjoyment of life and property.

4  Such conditions are objectionable to the neighborhood and community as a whole.

5       118. Plaintiff has no plain, speedy, or adequate remedy at law. Therefore, unless restrained

6  by this Court, Plaintiff is informed and believes that Defendants will continue to maintain this

7  nuisance and thereby cause irreparable injury and harm to the public's health, safety, and welfare.

8                                          **II**

9                          **SECOND CAUSE OF ACTION**

10                **VIOLATIONS OF THE SAN DIEGO MUNICIPAL CODE**
                   **ALLEGED BY PLAINTIFF CITY OF SAN DIEGO AGAINST**
11                **ALL DEFENDANTS**

12      119. Plaintiff City of San Diego incorporates by reference all allegations in paragraphs 1

13  through 118 of this Complaint as though fully set forth here in their entirety.

14      120. Defendants are each a "Responsible Person" [1] within the meaning of Municipal Code

15  section 11.0210 for allowing and maintaining violations of the Municipal Code at the Property.

16      121. Defendants are also strictly liable for all code violations existing at the Property

17  pursuant to Municipal Code section 121.0311 and applicable California law.

18      122. Municipal Code section 121.0302(a) states: "It is unlawful for any person to maintain

19  or use any premises in violation of any of the provisions of the Land Development Code [2], without

20  a required permit, contrary to permit conditions . . . or without a required variance."

21  .   .   .   .   .

22  .   .   .   .   .

23  .   .   .   .   .

---

24      [1] Municipal Code section 11.0210 defines "Responsible person" as "[a] person who a Director determines is responsible for causing or maintaining a public nuisance or a violation of the Municipal
25  Code or applicable state codes. The term 'Responsible Person' includes but is not limited to a property owner, tenant, person with a Legal Interest in real property or person in possession of real property."
26
27      [2] Municipal Code section 111.0101(a) states that Chapters 11 through 14 of the San Diego Municipal Code "shall be known collectively, and may be referred to, as the Land Development Code"
28  and that Chapter 15 of the San Diego Municipal Code "shall [also] constitute a part of the Land Development Code."

123. Municipal Code section 121.0302(b)(4) states: "It is unlawful . . . [t]o maintain or allow the existence of any condition that creates a public nuisance." Beginning on an exact date unknown to Plaintiff, but since at least July 9, 2020, and continuing to the present, Defendants have maintained a public nuisance at the Property in violation of Municipal Code section 121.0302(b)(4).

124. Municipal Code section 142.0380(a) provides that property owners "shall maintain fences . . . free from dilapidated or dangerous conditions." Beginning on an exact date unknown to Plaintiff, but since at least July 9, 2020, and continuing to the present, Defendants have maintained broken and dilapidated fencing at the Property in violation of Municipal Code sections 142.0380(a) and 121.0302(a).

125. Municipal Code section 142.0360(b) states that "[s]harp-pointed metal fences are permitted for agricultural uses in agricultural zones only." Beginning on an exact date unknown to Plaintiff, but since at least July 9, 2020, and continuing through November 2, 2022, Defendants maintained a sharp-pointed metal fence in an area other than an agricultural zone in violation of Municipal Code sections 142.0360(b) and 121.0302(a).

126. Municipal Code section 145.0103 adopts the 2019 California Building Code and incorporates its requirements into the Municipal Code. Beginning on an exact date unknown to Plaintiff, but since at least July 9, 2020, and continuing to the present, Defendants have maintained an unsafe structure that fails to comply with the provisions of the 2019 California Building Code at the Property in violation of Municipal Code sections 145.0103 and 121.0302(a).

127. Municipal Code section 156.0308 prohibits parking lots in the Centre City Planned District, where the Property is located, without the required Conditional Use Permit. Beginning on an exact date unknown to Plaintiff, but since at least July 9, 2020, and continuing through approximately November 2, 2022, Defendants used a portion of the Property as a paid parking lot in violation of Municipal Code sections 156.0308 and 121.0302(a).

128. Municipal Code section 126.0306 states, "It is unlawful for any person to maintain, use, or develop any premises without a Conditional Use Permit if such permit is required for that use . . . ." Beginning on an exact date unknown to Plaintiff, but since at least July 9, 2020, and

1  continuing through approximately November 2, 2022, Defendants maintained a use at the

2  Property without the required Conditional Use Permit in violation of Municipal Code section

3  126.0306.

4     129. Municipal Code section 54.0208 states that "[i]t is unlawful for any Responsible

5  Person to fail to maintain real property and appurtenances under his or her control" and/or any

6  "public walkway" abutting their property free from Waste. Beginning on an exact date unknown

7  to Plaintiff, but since at least July 9, 2020, and continuing through November 2, 2022, Defendants

8  failed to maintain the Property and the abutting public walkways free from Waste in violation of

9  Municipal Code section 54.0208.

10    130. Municipal Code section 54.0306(d) states, "It is unlawful for any responsible person

11  for an abandoned property to fail to lock, barricade or secure all doors, windows and other

12  openings to any vacant structure on the property in accordance with the standards listed in this

13  Division." Beginning on an exact date unknown to Plaintiff, but since at least July 9, 2020, and

14  continuing through November 18, 2022, Defendants failed to lock, barricade or secure all doors,

15  windows and other openings at the Property in accordance with the Municipal Code in violation

16  of Municipal Code section 54.0306(d).

17    131. Municipal Code section 54.0306(e) states, "It is unlawful for any responsible person

18  for an abandoned property to fail to remove from the entire property including the interior of any

19  vacant structure, any of the following: litter, waste, rubbish, solid waste, liquid waste, debris,

20  unpermitted vehicles, storage not incidental to the corresponding zoning use for the property, or

21  excessive vegetation as determined by a fire inspector to constitute a fire hazard." Beginning on

22  an exact date unknown to Plaintiff, but since at least July 9, 2020, and continuing to the present,

23  Defendants have failed to remove litter, waste, rubbish, solid waste, liquid waste, debris, and

24  storage not incidental to the corresponding zoning use for the property in violation of Municipal

25  Code section 54.0306(e).

26    132. Municipal Code section 54.0405(b) states, "It is unlawful for any responsible person

27  to maintain graffiti that has been placed upon, or to allow graffiti to remain upon, any surface

28  within that person's control, possession or ownership when the graffiti is visible from the street or

23

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF

EXHIBIT 4
Page 23

1   other public property." Beginning on an exact date unknown to Plaintiff, but since at least

2   July 9, 2020, and continuing to the present, Defendants have allowed graffiti visible from the

3   public right-of-way to remain on the exterior of the Property in violation of Municipal Code

4   section 54.0405(b).

5       133. Plaintiff City of San Diego has no adequate remedy at law, and unless Defendants are

6   enjoined and restrained by an order of this Court, Defendants will continue to violate the

7   Municipal Code, thereby causing irreparable injury and harm to the public's health, safety, and

8   general welfare.

9   **PRAYER**

10       **WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows:

11   **AS TO THE FIRST CAUSE OF ACTION**

12   **Public Nuisance**

13       1.   That the Property, together with the fixtures and moveable property, be declared a

14   continuing public nuisance as defined by California Civil Code sections 3479 and 3480.

15       2.   That pursuant to California Code of Civil Procedure sections 526 and 731, the Court

16   grant a preliminary injunction and permanent injunction, enjoining and restraining Defendants,

17   their agents, heirs, successors, officers, employees and anyone acting on their behalf from

18   maintaining the Property or any other property in the City and County of San Diego as a public

19   nuisance as defined per California Civil Code sections 3479 and 3480.

20       3.   If Defendants fail to comply with paragraph 2 of the Prayer above, then within 48

21   hours after posting written notice of its intention, the City or its contractor is authorized pursuant

22   to California Civil Code sections 3491 and 3494 to accomplish the work and recover all costs of

23   abating the nuisance at the Property. The expense of the abatement is recoverable by the City

24   according to the provisions of California Government Code sections 38773.1 and 38773.5.

25   .  .  .  .  .

26   .  .  .  .  .

27   .  .  .  .  .

28   .  .  .  .  .

1

## AS TO THE SECOND CAUSE OF ACTION

2  **Violations of the San Diego Municipal Code**

3          4.   That the Court declare the Property to be in violation of:

4                  San Diego Municipal Code sections

| | | | |
|---|---|---|---|
| 121.0302(a) | 121.0302(b)(4) | 54.0306(d) | 54.0208 |
| 142.0360(b) | 142.0380(a) | 54.0405(b) | 126.0306 |
| 145.0103 | 156.0308 | 54.0306(e) | |

7          5.   That, pursuant to Municipal Code sections 12.0202(a) and 121.0311, the Court grant a

8  preliminary injunction and permanent injunction, enjoining and restraining Defendants, their

9  agents, officers, employees and anyone acting on their behalf, from keeping, allowing, or

10  maintaining violations of the Municipal Code at the Property or anywhere else in the City of

11  San Diego.

12          6.   That Defendants, their agents, heirs, successors, officers, employees, and anyone

13  acting on their behalf, are required to maintain the Property in full compliance with the Municipal

14  Code.

15          7.   If Defendants fail to comply with paragraphs 5 and 6 of the Prayer above, then within

16  48 hours after posting written notice of its intention, the City or its contractor is authorized to

17  accomplish the work and recover all costs of bringing the Property into compliance. The expense

18  of the abatement is recoverable by the City according to the provisions of California Government

19  Code sections 38773.1 and 38773.5 and Municipal Code section 12.0204(b).

20          8.   That Defendants allow personnel from the City of San Diego access to the Property to

21  inspect and monitor for compliance upon 24-hour verbal or written notice. Inspections shall occur

22  between the hours of 8:00 a.m. and 5:00 p.m.

23          9.   That, pursuant to Municipal Code section 12.0202(b), Defendants are assessed a civil

24  penalty of $2,500 per day for each and every Municipal Code violation maintained at the

25  Property.

26  .   .   .   .   .

27  .   .   .   .   .

28  .   .   .   .   .

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF

EXHIBIT 4
Page 25

**AS TO ALL CAUSES OF ACTION**

10. That Plaintiffs recover all costs incurred by Plaintiffs, including the costs of investigation and any fees authorized by law, from Defendants.

11. That Plaintiffs be granted such other and further relief as the nature of the case may require and the Court deems appropriate.

Dated: April 26 , 2023                     MARA W. ELLIOTT, City Attorney

                                           By
                                              David E. Miller
                                              Deputy City Attorney

                                           Attorneys for Plaintiffs

COMPLAINT FOR INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF

EXHIBIT 4
Page 26

# EXHIBIT 5

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7072 |

PLAINTIFF(S) / PETITIONER(S):     The People Of The State Of California et.al.

DEFENDANT(S) / RESPONDENT(S):  Caydon San Diego Property LLC et.al.

THE PEOPLE OF THE STATE OF CALIFORNIA VS CAYDON SAN DIEGO PROPERTY LLC [IMAGED]

| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER: <br> 37-2023-00017820-CU-MC-CTL |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Timothy Taylor                                          Department: C-72

**COMPLAINT/PETITION FILED:** 04/27/2023

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 11/17/2023 | 09:15 am | C-72 | Timothy Taylor |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

---

SDSC CIV-721 (Rev. 04-21)     **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)**     Page: 1

EXHIBIT 5

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

EXHIBIT 5

# EXHIBIT 6



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ELECTRONIC FILING REQUIREMENTS (CIVIL)

This document includes the San Diego Superior Court's electronic filing (e-filing) requirements for civil. These requirements are issued pursuant to Cal Rules of Court, rules 2.250 et seq., Code of Civil Procedure section 1010.6, and San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.

Documents that are determined to be unacceptable for e-filing by the court due to e-filing system restrictions or for failure to comply with these requirements will be rejected, subject to being allowed to be filed nunc pro tunc to the original submittal date, upon ex-parte application to the court and upon good cause shown.

It is the duty of the plaintiff or petitioner (and cross-complainant) to serve a copy of the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases along with a copy of this form, Electronic Filing Requirements (Civil) (SDSC Form #CIV-409), with the complaint/petition or other case-initiating document (and cross-complaint).

## MANDATORY AND PERMISSIVE E-FILING
Effective April 15, 2021, filings submitted by attorneys for represented parties in limited and unlimited civil actions must be submitted electronically through one of the court's approved electronic filing service providers (EFSPs), with limited exceptions for certain documents (see below list of ineligible documents). E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.

Any request to be excused from the mandatory e-filing requirements must be submitted in writing and may be made by ex-parte application to the judge or department to whom the case is assigned. The clerk will not accept or file any documents in paper form that are required to be filed electronically, absent a court order allowing the filing.

All documents e-filed must be electronically served on all parties in the case pursuant to Cal. Rules of Court, rule 2.251(c).

In all e-filed cases, the court will maintain and make available an official electronic service (e-service) list through the court's EFSPs. This is the service list the court will use to serve documents on the parties. (See Cal. Rules of Court, rule 2.251(e).) By filing electronically, the party is consenting to e-service unless the court excuses a party from doing so. Parties must provide the EFSP with their correct contact information, including an updated email address, in each e-filed case. New parties must provide the EFSP with their email address for that case within seven (7) days of filing their first document or joining the case, whichever is earlier. A party whose email address changes must, within seven (7) days of the change, notify the EFSP, file a Notice of Change of Electronic Service Address (JC Form #EFS-010) electronically, and serve the notice electronically on all parties required to be served. (See Cal. Rules of Court, rule, 2.251(g)(1).) Failure to keep an email address updated may result in the court being unable to provide notice to a non-complying party of upcoming hearings, orders, and other proceedings.

## REQUIREMENTS FOR ALL E-FILERS
E-filed documents may only be filed through one of the court's approved EFSPs. The list of EFSPs may be found on the court's website at www.sdcourt.ca.gov under "E-Filing" for the case type to be filed.

E-filers must comply with Cal. Rules of Court, rules 2.250-2.261. Also, all documents e-filed must be in a pdf format using Adobe Acrobat version 7 or higher, and must be in a text-searchable format (i.e., optical character recognition (OCR)). The court is unable to accept documents that do not comply with these requirements, nor documents with certain characteristics, including, but not limited to: forms with fillable fields, a negative image, or an image that is saved as an 'object' on the filed document.

E-filers are required to enter all parties listed on the document being filed if the party is not already a part of the case. (If the e-filer is submitting a new complaint, ALL parties must be entered.) If all parties are not entered, the transaction will be rejected.

Documents that contain exhibits must be bookmarked, as set forth on the EFSP's site. Documents not so bookmarked, including moving papers containing non-compliant exhibits, shall be rejected and/or not considered. (See Cal. Rules of Court, rule 3.1110(f).)

Exhibits to be considered via a "Notice of Lodgment" shall not be attached to the e-filed "Notice of Lodgment;" instead, the submitting party must provide the assigned department with copies in paper form of the exhibits with a copy of the "Notice of Lodgment" that includes the e-filing Transaction ID number noted in the upper right-hand corner.

**ELECTRONIC FILING REQUIREMENTS (CIVIL)**

EXHIBIT 6

Page 1

Exhibits to declarations that are real objects (i.e., construction materials, core samples, etc.) or other documents (i.e., plans, manuals, etc.), which otherwise may not be comprehensibly viewed in an electronic format must be lodged and will not be filed.

All documents must be uploaded as individual documents within the same transaction unless filing a motion.  Example: A "Request to Waive Court Fees" must be uploaded separately from the document to which it applies (i.e., complaint, answer or other responsive pleadings, motion, etc.)  If filing a notice of motion, all supporting documents must be scanned and uploaded as one document under a filing that most closely captures the type of motion.  All filings and exhibits within these filings must be bookmarked.

Unless otherwise required by law, pursuant to Cal. Rules of Court, rule 1.201(a), only the last four digits of a social security or financial account number may be reflected in court case filings.  Exclusion or redaction is the responsibility of the e-filer, not the clerk.  (See Cal. Rules of Court, rule 1.201(b)).  Failure to comply with this requirement may result in monetary sanctions pursuant to Cal. Rules of Court, rule 2.30(b).

To maintain confidentiality and ensure all redactions are appropriately applied, it is important that the submitting party remove metadata. Metadata is hidden information embedded within a document that may reveal a document's revision history, earlier drafts, information about the document's author, file name, file path, date of creation, etc. This information is still available and accessible even if the document was converted to a PDF. It is the submitting party's responsibility to familiarize themselves with metadata and how to remove it properly.

Proposed filings, such as proposed court orders and amended complaints, should be e-filed as an exhibit and then re-submitted as a separate and new e-filing transaction after the court has ruled on the matter.  (See Cal. Rules of Court, rule 3.1312 and SDSC Local Rules, rule 2.1.2(D).)

The court does not require that a version of the proposed order, in an editable word-processing format, be submitted in accordance with Cal. Rules of Court, rule 3.1312 (c). All documents submitted via e-filing are considered editable; however, a separate editable version may be submitted to efile@sdcourt.ca.gov.

If e-filing a negotiable instrument pursuant to Cal. Rules of Court, rule 3.1806, the court may, in its discretion, deem the electronic version the original and order it canceled and merged into the judgment.

Any document filed electronically shall be considered filed with the court when it is first transmitted to the EFSP, and the transmission is completed, except that any document filed on a day that the court is not open for business, or after 11:59:59 p.m. (Pacific Time) on a day the court is open for business, will be deemed to have been filed on the next court day.

E-filed documents must be correctly named and/or categorized by "Document Type."  The lead document must also be designated appropriately, as the lead document determines how the transaction will be prioritized in the work queue. Failure to correctly name the document and/or designate the lead document appropriately may result in a detrimental delay in the processing of the transaction.

A motion hearing date must be scheduled directly with the independent calendar department by calling the department or using the court's motion scheduler application, available at https://racd.sdcourt.ca.gov/.  A motion filed without a motion hearing date, even when a conformed copy of the filing is provided by the court, is not considered scheduled, and the hearing will not occur.

If a hearing is set within two (2) court days of the time documents are e-filed, the party(ies) must provide copies of the documents in paper form to the court.  Transaction ID numbers must be noted on the documents to the extent it is feasible to do so.  Copies in paper form for ex parte hearings must be delivered directly to the department on or before 12:00 p.m. (Pacific Time) the court day immediately preceding the hearing date.

E-filers must maintain originals of all documents that are e-filed with the court, including but not limited to those documents containing signatures, pursuant to Cal. Rules of Court, rule 2.257.

## ASSESSMENT OF FILING FEES
When submitting a filing through the EFSP, the e-filer authorizes the EFSP to charge the full amount of the transaction, including any statutory court fees that may be due.  For example, if a stipulation is submitted, along with the statutory filing fee for stipulations, if there are any outstanding first appearance fees for any or all of the parties due on the case, the clerk may assess those fees in addition to or instead of the stipulation fee.  The EFSP has the sole discretion to determine the fees charged for using its website or services.

## REFUND OF FEES ASSESSED THROUGH THE EFSP
Requests for refunds of fees paid directly to an EFSP as part of an e-file transaction must be submitted directly to the EFSP.  Any such requests made directly to the court will be denied.

SDSC CIV-409 (Rev. 2/23)
Informational Form

ELECTRONIC FILING REQUIREMENTS (CIVIL)EXHIBIT 6
Page 2

Code Civ. Proc. § 1010.6
Cal. Rules of Court, rule 2.250 et seq
Page 2 of 3

## DOCUMENTS INELIGIBLE FOR E-FILING
The following documents are **not eligible for e-filing** in cases subject to either mandatory or permissive filing, and shall be filed in paper form:
- Application for Order Declaring Information on Affidavit of Voter Registration Confidential and Order.
- Civil Harassment Temporary Restraining Order (TRO)/Restraining Order (RO). (All filings in this case type)
- Confidential documents lodged conditionally under seal.
- Elder Abuse TRO/RO. (All filings in this case type)
- Gun Violence Emergency Protective Order. (All filings in this case type)
- Gun Violence TRO/RO. (entire case type)
- Interpleader actions pursuant to Code of Civil Procedure section 2924j.
- Notice of Appeal of Labor Commissioner.
- Out-of-State Commission Subpoenas.
- Private Postsecondary School Violence Prevention TRO/RO. (All filings in this case type)
- Safe at Home Name Change Petitions. (All filings in this case type)
- Settlement Conference Briefs (to be lodged only).
- Subpoenaed Documents.
- Stand-alone exhibits.
- Transitional Housing Program Misconduct TRO/RO. (All filings in this case type)
- Trial Exhibits
- Undertaking/Surety Bonds.
- Warrants.
- Workplace Violence TRO/RO. (All filings in this case type)

The following documents **shall be filed in paper form,** unless the court expressly directs otherwise:
- Documents filed under seal or provisionally under seal pursuant to Cal. Rules of Court, rule 2.551.
- New Complaints/Petitions filed designating the plaintiff/petitioner as a pseudonym pursuant to Cal. Rules of Court, rule 2.551 (any request for a sealing order in connection with such a filing must also be filed in paper form).
  - Filings submitted pursuant to Code of Civil Procedure section 367.3.
  - Filings submitted pursuant to Civil Code section 1708.85.
  - Filings submitted pursuant to Code of Civil Procedure section 527.6(v).
  - Filings submitted pursuant to Government Code section 12652.
  - Or any other initial filing wherein sealing orders are requested.

Be advised that media members have preview access to new unlimited civil complaints before the clerk's office processes them. As a reminder, it is the responsibility of the submitting party to ensure filings submitted for processing do not contain sensitive information that should not be available to the public.

## DOCUMENTS DISPLAYED ON THE PUBLIC-FACING REGISTER OF ACTIONS
Any documents submitted for e-filing (and accepted) will be filed and displayed on the San Diego Superior Court's public-facing Register of Actions with the exception of the following documents:
- CASp Inspection Report.
- Confidential Cover Sheet False Claims Action.
- Confidential Statement of Debtor's Social Security Number.
- Financial Statement.
- Disability Accommodation Request and Court's Response.
- Defendant/Respondent Information for Order Appointing Attorney Under Service Members Civil Relief Act.
- Request to Waive Court Fees.
- Request to Waive Additional Court Fees.

Documents not included in the list above, that are intended to be kept confidential, should NOT be e-filed with the court.

## DOCUMENTS FILED PRIOR TO JUNE 2, 2014, THROUGH FILE&SERVE XPRESS
Prior to June 2, 2014, construction defect and other cases eligible at that time for e-filing, were filed electronically through File&Serve Xpress (fka LexisNexis File&Serve). Documents previously filed through File&Serve Xpress continue to be made available for viewing via a File&Serve Xpress subscription through LexisNexis or on the court's internal Coordinated Proceedings (CP)/Judicial Council Coordination Proceedings (JCCP) document viewer kiosk located in the Civil Business Office at the Hall of Justice, 330 W. Broadway, Room 225, San Diego, CA 92101.

SDSC CIV-409 (Rev. 2/23)          **ELECTRONIC FILING REQUIREMENTS (CIVIL)**          Code Civ. Proc., § 1010.6
Informational Form                                                                 Cal. Rules of Court, rule 2.250 et seq.
                                                                                   Page 3 of 3

EXHIBIT 6
Page 3

# EXHIBIT 7



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2023-00017820-CU-MC-CTL    CASE TITLE: The People Of The State Of California vs Caydon San Die

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
      (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
      (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), **_and_**
      (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

EXHIBIT 7

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

### Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
*   In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
*   In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

### Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

EXHIBIT 7

# EXHIBIT 8

F I L E D
Clerk of the Superior Court

MAR 1 1 2021

By: A. Husted, Deputy

1

2

3

4

5

6

7

8          THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
                         COUNTY OF SAN DIEGO
9

10   IN RE PROCEDURES REGARDING            GENERAL ORDER OF THE
     ELECTRONICALLY IMAGED COURT          PRESIDING DEPARTMENT
11   RECORDS, ELECTRONIC FILING, AND
     ACCESS TO ELECTRONIC COURT           ORDER NO. 010121-22 (A)
12   RECORDS IN CIVIL AND PROBATE
     CASES
13

14

15         THIS COURT FINDS AND ORDERS AS FOLLOWS:

16            1.  ELECTRONIC FILING AND IMAGING PROGRAM

17         On August 1, 2011, the San Diego Superior Court ("court") implemented an Electronic

18   Filing and Imaging Pilot Program (the "Program" or "Imaging Program") designed to reduce

19   paper filings and storage, facilitate electronic access to civil court files, allow remote electronic

20   filing ("e-file" or "e-filing") of papers in civil cases, and ultimately create paperless or electronic

21   files for civil and other case categories. The Program has since been expanded to other case types.

22   (See San Diego Local Rule, rule 2.1.4.)

23         The Program is being implemented in phases:

24         Phase One:  The court began scanning all papers in newly filed cases in designated

25   divisions and departments. The imaged documents are stored in an electronic court file that can

26   be viewed in the business offices and are accessible remotely through the "Register of Actions"

27   on the court's website as set forth below.  Imaging Program cases that are reassigned or

28

                                        1
                                                                   EXHIBIT 8
                                                                    Page 1

1  transferred to a department outside of the Program may be removed from the Program and
2  converted to a paper filing system.

3      Phase Two: E-filing access was implemented to allow e-filing by counsel and parties
4  through the court's e-file service providers in designated case types.

5      Phase Three: On October 2, 2017, the Imaging Program expanded to small claims cases.
6  All new small claims cases filed on or after October 2, 2017, are imaged and the documents are
7  being stored in an electronic court file that is available for viewing in all of the court's business
8  offices.

9      Phase Four: E-filing was expanded to allow e-filing by counsel and parties through
10  multiple e-filing service providers ("EFSPs") in designated case types.

11      Phase Five: Due to the COVID-19 pandemic and, pursuant to California Rules of Court
12  ("CRC"), Appendix I: Emergency Rules Related to COVID-19, rule 3, the court is accelerating
13  its efforts for the Program.

14      Accordingly, effective April 15, 2021, filings submitted by attorneys for represented
15  parties in all limited and unlimited civil case types and probate actions must be submitted
16  electronically through one of the court's approved e-filing service providers ("EFSPs"), with
17  limited exceptions for certain documents. (See ¶ 4 infra.) Self-represented litigants are
18  encouraged, but not required to e-file.

19      2. THE ELECTRONIC COURT FILE IN IMAGED CASES IS THE OFFICIAL
20         COURT RECORD

21      Pursuant to Government Code section 68150 and CRC, rule 2.504, the electronic court
22  file in Imaging Program cases is certified as the official record of the court. The paper filings that
23  are imaged and stored electronically will be physically stored by the court for 30 days after filing,
24  after which time they will be shredded and recycled, except for original wills and bonds in probate
25  cases, which will be physically retained by the court for the period required by law. During this
26  30-day period, these documents will not be stored in a manner that will allow a party or its attorney
27  to access them, and access will only be granted by order of the court upon a showing of good
28  cause.

EXHIBIT 8
Page 2

### 3.  CIVIL AND PROBATE CASES INCLUDED IN THE PROGRAM

The following cases have been or will be imaged and stored in an electronic court file, and are considered Imaging Program cases:

a.  Civil cases initiated after a particular department or division began participating in the Imaging Program;

b.  Civil class actions, construction defect cases, Judicial Council Coordinated Proceedings cases, consolidated and coordinated actions where all cases involved are imaged cases, and actions that are provisionally complex under CRC, rules 3.400-3.403 (as set forth in the Civil Case Cover Sheet).  "Complex cases" include antitrust/trade regulation, mass tort, environmental/toxic tort, and securities litigation cases, as well as insurance coverage claims arising from these case types;

c.  Probate cases filed on or after March 1, 2012, and all active probate cases initiated prior to March 1, 2012;

d.  All new limited and unlimited civil and probate cases; and,

e.  All small claims cases filed on or after October 2, 2017.

### 4.  MANDATORY AND PERMISSIVE ELECTRONIC FILING

Pursuant to CRC, Appendix I: Emergency Rules Related to COVID-19, rule 3; the court's inherent supervisory and administrative authority; and the Presiding Judge's duty to promote access to justice for all members of the public, taking into account the needs of the public and court as they relate to the efficient and effective management of the court (CRC, rule 10.603), and in order to protect the health and safety of the public, court personnel, judicial officers, parties, attorneys, and others, it is hereby ORDERED as follows:

Effective April 15, 2021, filings submitted by attorneys for represented parties in all limited and unlimited civil case types and probate actions must be submitted electronically through one of the court's approved EFSPs, with limited exceptions for certain documents. E-filing is also encouraged, but not mandated, for self-represented litigants in these case types.

Further information, including the list of documents excluded from the e-filing requirement and an approved list of court approved EFSPs can be found on the court's website,

3

EXHIBIT 8
Page 3

1   at www.sdcourt.ca.gov.  (See San Diego Superior Court ("SDSC") Form Nos. CIV-409, PR-188

2   for e-filing requirements.)

3          5.  GENERAL E-FILING REQUIREMENTS

4          Documents can only be electronically filed through court approved EFSPs.  EFSP

5   information is available on the court's website listed above.

6          All e-filers shall comply with CRC, rules 2.250-2.261 and California Code of Civil

7   Procedure ("CCP") § 1010.6.  All documents e-filed with the court must be in a text searchable

8   format (i.e., optical character recognition ("OCR")).  The court is unable to accept documents that

9   do not comply with these requirements, or documents with certain characteristics including, but

10  not limited to: forms with fillable fields, a negative image, or image that is saved as an "object"

11  on the filed document.

12         E-filers are required to comply with the San Diego Superior Court's electronic filing

13  requirements listed in the following forms available on the court's website: CIV-409 ("E-Filing

14  Requirements (Civil)") and PR-188 ("E-Filing Requirements (Probate)").    These forms also

15  contain a list of documents that are exempt from the mandatory e-filing requirements, including

16  those documents that cannot be e-filed ("List of Excluded Documents").  To the extent the List

17  of Excluded Documents conflicts with any San Diego Superior Court Local Rule ("Local Rule"),

18  the applicable portions of the Local Rules are repealed and are superseded by this General Order

19  and the e-filing requirements listed in CIV-409 and/or PR-188.

20         The receipt and filing of documents submitted electronically is governed by CCP 1010.6

21  and CRC, rule 2.259.  The court's filing deadline is 11:59:59 p.m. (Pacific Time) on court days.

22  The electronic transmission of a document to the court can take time, so waiting until shortly

23  before the deadline to electronically transmit a filing is not advised, as it could be received by the

24  court after 11:59:59 p.m. and deemed filed the next court day. Per CRC, rule 2.259(a)(4), the

25  filer is responsible for verifying that the court received and filed any document submitted

26  electronically. Please see the applicable EFSP's website for filing instructions. To the extent any

27  Local Rule sets forth a different time deadline for filing electronic documents, the applicable

28

4

EXHIBIT 8
Page 4

portions of the Local Rules are repealed and are superseded by this General Order and the e-filing requirements listed in CIV-409 and/or PR-188.

Additional and more specific information on electronic filing can be found on the court's website at www.sdcourt.ca.gov.

### 6. FILING AND SERVICE REQUIREMENTS IN ALL IMAGED CASES

a. Service of Notice:  Together with all other documents required by California law to be served, all parties filing new actions assigned to the Imaging Program must also serve copies on all parties of the notice of case assignment and any other court generated forms received from the court clerk when the case is initiated.

b. "Imaged" Identifier:  On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

c. Original Documents:  Original underlying documents, other than wills and bonds in probate cases, that are relevant to a case should not be attached as exhibits to filed documents or filed in any other manner, as these documents will be imaged and the paper filings destroyed in accordance with this Order (except for those documents set forth in paragraph 8.a. below). Any original document, other than a will or bond in a probate case, that is included in a filed document in a case within the Program will be imaged and destroyed in accordance with this Order.  Original documents may be lodged with the court, as necessary, under the procedures set forth in 8.a.(i) below.

d. Proposed Orders:  Proposed orders should only be submitted with initial pleadings for an ex parte hearing, and should not be submitted for a law and motion hearing until after the hearing is completed.

e. Exhibits:  Any exhibits attached to a pleading presented for filing must have the exhibit tabs located at the bottom of the respective documents, in accordance with CRC, rule 3.1110, and each exhibit must be preceded by a cover page that contains solely the word "Exhibit" and the exhibit's identifying number or letter.

EXHIBIT 8
Page 5

f. Confidential Documents: Any documents classified or considered confidential pursuant to statute, rule of court or local rule shall be filed with the court and will be imaged and destroyed in accordance with this order. Access to the imaged confidential document(s) shall be as set forth in paragraph 9.d. below.

g. Electronic Service: By filing electronically, the party is consenting to electronic service, unless the court excuses a party from doing so.  Parties must provide the EFSP with their correct contact information, including an updated email address, in each e-filed case.  New parties must provide the EFSP with their email address for that case within seven (7) days of filing their first document or joining the case, whichever is earlier.  A party whose electronic service email address changes must, within seven (7) days of the change, notify the EFSP, file a "Notice of Change of Electronic Service Address" (Judicial Council ("JC") Form #EFS-010) electronically, and serve this notice electronically on all parties required to be served. (See Cal. Rules of Court, rule, 2.251(g)(1).)  Failure to keep an email address updated may result in the court being unable to provide notice to a non-complying party of upcoming hearings, orders, and other proceedings. An email address used to file documents will be presumed valid if a party has not filed and served notice that the address is no longer valid.

h. Original Documents: E-filers must maintain originals of all documents that are e-filed with the court, including but not limited to those documents containing signatures, pursuant Rule 2.257.

## 7.  REQUIREMENTS SPECIFIC FOR CIVIL CASES OTHER THAN PROBATE:

a. Lodged Documents:

The "Notice of Lodgment" itself must be filed with the court.  In accordance with CRC, rule 3.1302, the documents submitted with the notice must be lodged and not filed.  The lodged documents will not be imaged, will not be part of the official court file, and will be returned in the manner requested or recycled if no manner of return is specified.

b. Documents in Support of Judgments:

Applications for entry of a judgment that include an instrument, contract, or written obligation will have the relevant document(s) cancelled and merged if the judgment is entered, in

6

EXHIBIT 8
Page 6

accordance with CRC, rule 3.1806, after which the document will then be imaged and maintained in the electronic court record. The submitted document(s) will then be returned to the proffering party for safe-keeping. Parties must provide a suitable method of return along with the submitted document(s). If no method of return is included, the document(s) will be shredded and recycled.

## 8.   REQUIREMENTS SPECIFIC FOR PROBATE CASES:

a. Filing/Lodging Documents for Calendared Matters:

    i.    The Notice of Lodgment itself must be filed with the court. In accordance with CRC, rule 3.1302 and Local Rule 4.3.3, the documents submitted with the notice must be lodged and not filed. The lodged documents will not be part of the official court file, and will be returned in the manner requested or recycled if no manner of return is specified.

    ii.    A party filing a petition, motion or other paperwork that refers to a trust must file a copy of the trust under a "Trust Coversheet" in accordance with Local Rule 4.3.3.

    iii.    In support of an accounting of assets as required by Probate Code section 2620 or an interim accounting required by Local Rule 4.15.2, the account statements, closing escrow statements, and bill statements for a residential or long-term care facility may be filed with the court, under a "Financial Statement Coversheet." Alternatively, originals may be lodged in accordance with the procedures in paragraph 8.a.(i) above. The lodged documents will not be part of the official court file, and will be returned in the manner requested after the court's determination of the accounting has become final.

b. Inclusion of Petition's Register of Action Number on All Pleadings:

    Parties are ordered to comply with Local Rule 4.3.1 and include the petition's register of action ("ROA") number directly below the case number on all subsequently filed pleadings related to that petition.

///

///

///

7

EXHIBIT 8
Page 7

9.  ENHANCED ELECTRONIC ACCESS TO OFFICIAL COURT FILE AND
    COURT DOCUMENTS IN ALL IMAGED CASES

a. Access in Clerk's Business Offices:  Public kiosks providing free access to the official electronic record of the court files for cases being handled under the Program are available in the below business offices:

- Hall of Justice Civil Business Office, 330 West Broadway, San Diego, California 92101;
- East County Family Business Office, 250 E. Main Street, El Cajon, California, 92020;
- South County Family Business Office, 500 Third Avenue, Chula Vista, California, 91910;
- Central Courthouse, Probate Business Office, 1100 Union Street, San Diego, California, 92101; and
- North County Civil Business Office, 325 S. Melrose Drive, Vista, California, 92081.

The public may access these files and view all public portions of the files just as they currently can in the paper court files.  If there are people waiting to use the kiosks, a time limit of 15 minutes will be imposed.  Additional time will be permitted after waiting in line to use one of the kiosks again.  Any changes to this policy will be made by the Presiding Judge of the court and the new policy will be posted in the applicable business offices.

b. Notice Regarding Electronic Access:  In accordance with CRC, rule 2.504, the public accessing court records electronically, are advised that the Manager of Central Court Civil and Small Claims Operations is the court staff member who may be contacted about the requirements for accessing the court's records electronically in all divisions of the court supporting imaging and e-filing.

c. Copyright and other proprietary rights may apply to information in a case file, absent express grant of additional rights by the holder of the copyright or other proprietary right.  In this regard, you are advised:

    i.   Use of such information in a case file is permissible only to the extent permitted by law or court order; and,

    ii.  Any use inconsistent with proprietary rights is prohibited.

8

EXHIBIT 8
Page 8

d. Access to Confidential Documents:  Court documents classified or considered confidential pursuant to statute or rule of court shall remain confidential and may not be released except to the extent necessary to comply with the law.

e. The electronic records of cases within the Program available for viewing in the business offices are the official records of the court.  There is no charge for accessing or viewing court files in the business offices.  Copies, including certified copies, of any documents in an electronic court file may be obtained by paying the applicable fee. The court's "Fee Schedule" is available online on the court's website at www.sdcourt.ca.gov.  (See SDSC Form No. ADM-001).  Additional instructions about obtaining printed copies of records from the electronic file will be provided at the kiosk locations in the applicable business offices; instructions are also available online at the court's website listed above.

f. Any person who willfully destroys or alters any court record maintained in electronic form is subject to the penalties imposed by Government Code section 6201.

g. No person shall photograph or otherwise record any digital images of documents displayed on the kiosk screens in the business offices.

h. Remote Electronic Access of Program Cases:  Court documents from records of cases within the Program are available in electronic format for viewing and printing remotely to the extent permitted by California law and/or CRC, rule 2.503(b), by visiting the court's website and paying the required fees. (See SDSC Form No. ADM-001 for the court's "Fee Schedule").

This Order shall expire on December 31, 2021, unless otherwise ordered by this court.

IT IS SO ORDERED.

DATED: March 11, 2021

_____
HON. LORNA A. ALKSNE
PRESIDING JUDGE

9

EXHIBIT 8
Page 9

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

      I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

4

5

      On June 1, 2023, I served the foregoing document(s) described as **DECLARATION OF ELIZABETH A. SPERLING IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL** on the interested parties to this action by delivering thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

6

7

SEE ATTACHED LIST

8

☒   **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

9

10

11

12

☐   **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

13

14

☐   **(BY E-MAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

15

16

☐   **(BY OVERNIGHT DELIVERY)** I served the foregoing document by FedEx, an express service carrier which provides overnight delivery, as follows:  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

17

18

19

☐   **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

20

☐   (State)     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

21

22

☒   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

23

24

Executed on June 1, 2023 at Los Angeles, California.

25

26

_____
Elizabeth Koch-Lenaire

27

28

1

**PROOF OF SERVICE**

1

**SERVICE LIST**

2     MARA W. ELLIOTT, City Attorney                   Attorneys for Plaintiffs
      PAIGE E. FOLKMAN, Assistant City Attorney        The People of the State of California and
3     DAVID E. MILLER, Deputy City Attorney            City of San Diego
      Office of the City Attorney
4     Community Justice Division /
      Nuisance Abatement Unit
5     1200 Third Avenue, Suite 700
      San Diego, California 92101-4103
6     Telephone:  (619) 533-5500
      Fax:  (619) 533-5505
7     Email:  MillerDE@sandiego.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**PROOF OF SERVICE**

2292562